**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------------

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| CARL AND PAULINE CHEN, | ) Case No. 17-12269 (LSS) |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |

-------------------------------------------------------------------

| | |
|---|---|
| ANDREW R. VARA, | ) |
| Acting United States Trustee, Region 3, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. No. 18-50004 (LSS) |
| | ) |
| CARL AND PAULINE CHEN, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

-------------------------------------------------------------------

| | |
|---|---|
| SAMIR PATEL, AJAY BHATT, MING YE, | ) |
| JOSEPH SHAN, PETER SZETO, GENE LOU | ) |
| AND NORMAN NELSON, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Adv. No. 18-50005 (LSS) |
| v. | ) |
| | ) |
| CARL AND PAULINE CHEN, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

-------------------------------------------------------------------

------------------------------------------------------------------  )
                                                                    )
TERRY YU-CHIA CHOU,                                                 )
                                                                    )
                                                                    )
                             Plaintiff,                             )
                                                                    )
v.                                                                  )
                                                                    )  Adv. No. 18-50006 (LSS)
CARL AND PAULINE CHEN,                                              )
                                                                    )
                             Defendants.                            )
                                                                    )
                                                                    )
                                                                    )
                                                                    )
                                                                    )
------------------------------------------------------------------  )


**UNITED STATES TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS 2 AND 3 OF THE AMENDED COMPLAINT – DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727**

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE,**
**REGION 3**
Jane Leamy, Esq. (DE #4113)
Linda Richenderfer, Esq. (DE #4138)
Jaclyn Weissgerber, Esq. (DE #6477)
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Phone: (302) 573-6491
Fax: (302) 573-6497

Dated: August 2, 2018

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT……………………………………............1

II.   NATURE AND STAGE OF THE PROCEEDING……………………........2

III.  SUMMARY OF ARGUMENT………………………………………..........3

IV.   STATEMENT OF FACTS……………………………………………………4

   A. Debtors Failed to Maintain Necessary Information Regarding Their Financial
      Condition and Business Transactions and Cannot Account for Dissipation of Over
      $7 Million……………………………………......................................................4

   B. Material Uncontested Facts – Debtors' Background……………………...............5

   C. Material Uncontested Facts – Lack of Documentation Regarding Loans and
      Transfers Between Debtors and Related Entities…………………………………8

   D. Material Uncontested Facts – Lack of Documentation Regarding Loans from
      Investors and Lack of Documentation on Dissipation of Assets………………...10

V.    ARGUMENT……………………………………………………………………11

   A. Pursuant to Section 727(a)(3), Debtors Should be Denied a Discharge for Failure
      to Maintain Books and Records Memorializing Relevant Transactions….............12

      1. Debtors Failed to Maintain and Preserve Adequate Records………..13

      2. Debtors' Failure to Maintain Records is Not Justified………………16

   B. Pursuant to Section 727(a)(5), Debtors Should be Denied a Discharge for Failure
      to Provide a Satisfactory Explanation of What Occurred with Respect to $7
      Million……………………………………………………………………………...19

      1. There has been a Substantial Loss of Debtors' Assets………………20

      2. Debtors Have Not Provided a Satisfactory Explanation for the
         Dissipation of Assets…………………………………………………...20

VI.   CONCLUSION………………………………………………………………22

I

## TABLE OF AUTHORITIES

## CASES

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................ 11, 12

*Chalik v. Moorefield, (In re Chalik),* 748 F.2d 616 (11th Cir. 1984) ........................................... 23

*Christy v. Kowalski*, 316 B.R. 596 (Bankr. E.D.N.Y. 1993) ........................................... 18

*Desiderio v. Devani,* 556 B.R. 37 (Bankr. E.D.N.Y. 2016) ............................................... 14, 15, 19

*Harrington v. Simmons (In re Simmons),* 810 F.3d 852 (5th Cir. 2016) .................................... 16

*In re Buzzelli*, 246 B.R. 75 (Bankr. W.D. Pa. 2000) ................................................... 21, 22

*In re Cook*, 146 B.R. 934 (Bankr. E.D. Pa. 1992) ........................................................ 23

*In re Hermanson,* 273 B.R. 538 (Bankr. N.D. Ill. 2002) ........................................... 20, 21

*In re Park*, 682 F. App'x 88 (3d Cir. 2017) ................................................................ 21

*In re Rose*, 425 B.R. 145 (Bankr. M.D. Pa. 2010) ........................................................ 12

*In re Simmons*, 525 B.R. 543 (1st Cir. BAP 2015), *aff'd*, 810 F.3d 852 (1st Cir. 2016) .............. 21

*In re Spitko*, 357 B.R. 272 (Bankr. E.D. Pa. 2006) ........................................................ 21

*In re Yanni*, 354 B.R. 708 (Bankr. E.D. Pa. 2006) ........................................................ 21

*Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1 (1st Cir. 2015) .......................................... 11, 15

*Krohn v. Frommann*, 153 B.R. 113 (Bankr. E.D.N.Y. 1993) ........................................... 17

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................... 12

*Meridian Bank v. Alten,* 958 F.2d 1226 (3d Cir. 1992) ............................................... 13, 14, 17, 19

*Shamshovich v. Racer (In re Racer),* 580 B.R. 45 (Bankr. E.D.N.Y. 2018) ............................... 22

*Sonders v. Mezvinsky (In re Mezvinsky)*, 265 B.R. 681 (Bankr. E.D. Pa. 2001) ......................... 23

## <u>STATUTES</u>

11 U.S.C. § 727 ........................................................................................................ 1, 2, 3, 22

24 Del. C. § 2907(d) ...................................................................................................... 14, 17

28 U.S.C. § 586 ............................................................................................................... 1, 19

## <u>RULES</u>

Fed. R. Civ. P. 56 ................................................................................................................ 1

Fed. R. Bankr. P. 7056 ....................................................................................................... 1

Fed. R. Bankr. P. 9014 ..................................................................................................... 11

Andrew R. Vara, the Acting United States Trustee for Region 3 ("Plaintiff"), through his

undersigned counsel and in furtherance of his duties and responsibilities under 28 U.S.C. §§

586(a)(3) and (5), pursuant to Rule 56 of the Federal Rules of Civil Procedure, as incorporated

herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure, has moved for partial

summary judgment with respect to Counts 2 and 3 of Plaintiff's Amended Complaint - Denial of

Discharge under 11 U.S.C. § 727 (the "Amended Complaint") filed in Adversary Proceeding No.

18-50004 (LSS), and in support thereof has filed this Memorandum of Law.

## I.    PRELIMINARY STATEMENT

Over a period spanning at least ten years, Debtors Carl and Pauline Chen (collectively,

the "Debtors") borrowed over $7 million from numerous friends, family, co-workers and

acquaintances for the purported purpose of investing in distressed real estate, promising

significant monthly interest payments (10% to 15% in some instances) and repayment of

principle upon demand.  The Debtors, under the auspices of Mr. Chen's real estate broker

license, continued to borrow large sums of money for "investment purposes" even when they

stopped purchasing real estate investment properties.  The Debtors have openly admitted that the

funds were used to pay personal expenses and to cover "negative cash flow," and they failed to

maintain records by which to account for their loan receipts and expenditures.  The Debtors have

not and cannot prove what became of the $7 million they received from their creditors.  There

are more than sufficient undisputed material facts by which the Plaintiff can meet his burden of

proving, by a preponderance of the evidence, that pursuant to sections 727(a)(3) and (5) of the

Bankruptcy Code, the Debtors are not entitled to a discharge.

## II.    NATURE AND STAGE OF THE PROCEEDING

On October 24, 2017 (the "Petition Date"), the Debtors filed a joint voluntary petition for chapter 7 relief in the United States Bankruptcy Court for the District of Delaware.  Alfred T. Giuliano (the "Trustee") was appointed as Debtors' Chapter 7 trustee.  The section 341 meeting of creditors commenced on December 6, 2017 and was concluded on April 27, 2018.

On January 12, 2018, the Plaintiff initiated Adversary Proceeding No. 18-50004 ("Adversary 1"), by filing a complaint seeking denial of the Debtors' discharge pursuant to sections 727(a)(2) and (a)(5) of the Bankruptcy Code.  The Debtors answered the complaint on February 6, 2018, and the Court entered a Pretrial Scheduling Order for this proceeding on February 22, 2018. The Plaintiff filed the Amended Complaint on June 15, 2018, and the Debtors filed their Answer and Affirmative Defenses thereto on or about June 25, 2018.

Also on January 12, 2018, a second complaint was filed against the Debtors by Samir Patel *et al.,* commencing Adversary Proceeding No. 18-50005 ("Adversary 2").  The complaint in Adversary 2 asserted claims pursuant to sections 523(a)(2)(A) and (a)(4) and 727(a)(2), (a)(3), and (c)(1) of the Bankruptcy Code.   The Debtors answered this complaint on February 2, 2018, and a pretrial scheduling order for this proceeding was entered on February 28, 2018.

On January 16, 2018, a third adversary complaint was filed against the Debtors by Terry Yu-Chia Chou, commencing Adversary Proceeding No. 18-50006 ("Adversary 3," and, with Adversary 1 and Adversary 2, the "Adversary Proceedings").  The complaint in Adversary 3 asserted claims pursuant to section 523(a)(2)(A) and (a)(2)(B) of the Bankruptcy Code.  The Debtors answered this complaint on February 20, 2018.  A separate pretrial scheduling order was never entered for Adversary 3.

2

All three complaints concern the Debtors' solicitation of investments for the purchase of real property with the promise of a 10% to 15% monthly rate of return, and the Debtors' misuse of the invested funds.  On April 11, 2018 the Court issued an Order granting the Debtors' motion to consolidate the Adversary Proceedings.  A Consolidated Case Management and Scheduling Order (the "CMO") was entered on April 17, 2018.  The CMO, which superseded the previously issued Pretrial Scheduling Orders, set June 29, 2018 as the fact discovery deadline and August 2, 2018 as the dispositive motions deadline for the Adversary Proceedings.

The only deposition to occur was that of Mr. Chen on May 17, 2018.  In response to the Plaintiff's document requests served on March 14, 2018, the Debtors declared that documentation was produced to the Plaintiff to the extent the Debtors were in possession of any responsive information after documents were turned over to the Trustee's accountant.  (*See* Plaintiff's First Request for Production of Documents and Defendants' Amended Responses to Plaintiff's Requests for Production of Documents (the "Amended Responses"), attached hereto as Exhibit "A."  *See also*  Declaration of Michael Infanti, CPA, CIRA, CFE in Support of the United States Trustee's Motion For Partial Summary Judgment on Counts 2 and 3 of the Amended Complaint – Denial of Discharge Under 11 U.S.C. § 727 (the "Infanti Dec."), attached hereto as Exhibit "B," which describes the information the Debtors turned over to the "Trustee's accountant.").  The Court has not yet set a pretrial hearing date or a trial date.  The next status conference is scheduled for August 23, 2018 at 2:30 p.m.

## III.    SUMMARY OF ARGUMENT

A.    Under section 727(a)(3) of the Bankruptcy Code, the Court shall not grant a debtor a discharge if they failed to keep or preserve information from which their financial condition and business transactions may be ascertained, unless the Court finds that the failure is

justified.   As set forth below in the Statement of Uncontested Facts, the Plaintiff has met his

burden of proving by a preponderance of the evidence that the Debtors failed to keep records

regarding their financial condition and receipt and loss of approximately $7 million in loans.

The burden therefore shifts to the Debtors to prove that this failure is justified.  The uncontested

material facts do not support a justification defense, and the Debtors should be denied a

discharge.

   **B.**  Under section 727(a)(5) of the Bankruptcy Code, the Court shall not grant a

discharge if a debtor fails to explain the loss or deficiency of their assets.  As set forth below in

the Statement of Uncontested Facts, the Plaintiff has met his burden of proving by a

preponderance of the evidence that the Debtors have not, and cannot, explain what occurred with

respect to the $7 million they received from investors.  The burden therefore shifts to the Debtors

to satisfactorily explain the dissipation of the loan proceeds, which they have been unable to

accomplish as their vague assertions of using funds to cover "negative cash flows" are

insufficient.  The Debtors should therefore be denied a discharge.

### IV. STATEMENT OF FACTS[1]

  **A. Debtors Failed to Maintain Necessary Information Regarding Their Financial Condition and Business Transactions and Cannot Account for the Dissipation of Over $7 Million**

  For at least the last twenty years Mr. Chen, a Delaware licensed real estate broker,

borrowed large sums of money (totaling almost $7 million) from individual investors for the

purported purpose of investing in real estate.  Signed promissory notes exist for some of the

---

[1]  Section A sets forth in a summary narrative fashion the pertinent facts that form the basis upon which the Debtors should be denied a discharge.  Sections B through D outline the specific relevant underlying material uncontested facts and references the source of the information.  While all of Mr. Chen's deposition testimony supports the denial of a discharge, the reason why the entire transcript has been submitted, specific sections of Mr. Chen's testimony are referenced by page number in sections B though D.

loans; for others there are only unsigned notes; and in some instances documentation memorializing an initial or additional loan does not exist. Monthly interest payments were made on the loans, and some lenders received repayment of at least a portion of their principal. Records evidencing or summarizing these payments do not exist. Further, the Debtors did not maintain the bank statements and cancelled checks that Mr. Chen contends would show the receipt and flow of funds. Because the Debtors have not filed tax returns since 2009, no alternate source of information regarding the details of their financial condition exists. In summary, the Debtors failed to maintain records from which their financial condition can be ascertained, this failure is not justified, and the Debtors cannot account for the dissipation of almost $7 million in loan proceeds.

### B.  Material Uncontested Facts – Debtors' Background

1.      The Debtors filed their original Statement of Financial Affairs ("SOFAs") and Schedules on October 24, 2017 at the same time as their Petition. [D.I. 1][2]. (Exhibit "C" hereto). On December 5, 2017, the Debtors filed amendments to certain sections of their SOFAs and their Schedules. [D.I. 23]. (Exhibit "D" hereto).

2.      Both Debtors signed the original and amended SOFAs and Schedules, declaring under penalty of perjury that the information supplied was true and correct. (*See* Exhibits "C" and "D").

3.      On Schedules A and B, the Debtors identified total assets worth approximately $1.18 million, with $600,000 of that amount attributed to the Debtors' residence at 11 Bromley Court in Wilmington, Delaware and $475,000 attributed collectively to three (3) investment properties. (*See* Exhibit "C".)

---

[2]      Unless noted otherwise, docket references are to filings in the Debtors' main case, *In re: Carl and Pauline Chen,* Case No.: 17-12269 (LSS).

4.       Two of the investment properties owned by the Debtors were purchased twenty years ago and the third was purchased fifteen years ago.  (May 17, 2018 Deposition of Carl Chen (the "Chen Dep."), pp. 65 – 69. A true and correct copy of the entire Chen Dep. Transcript is attached hereto as Exhibit "E").

5.       The last time Mr. Chen purchased a property in his own name was fifteen years ago.  (Chen Dep., p. 72).

6.       The last tax return filed by the Debtors was for the year 2009.  (Chen Dep., p. 14).

7.       The Debtors hold ownership interests in several businesses.  As of the Petition Date, Mr. Chen owned 100% of ChenMax Properties, Inc. ("ChenMax"); 45% of Re/Max Sunvest Realty ("Re/Max"); and 25% of Sunvest Properties, LLC.  (*See* Exhibit "C".)

8.       The last tax return filed for ChenMax was for the year 2009.  (Chen Dep., p. 14).

9.       Liabilities listed by the Debtors on Schedules D, E and F exceed $7.5 million. Schedules E and F identify approximately 41 outstanding unsecured loans received by the Debtors from individual investors (the "Investors"), totaling nearly $7 million.  (*See* Exhibits "C" and "D".)

10.       Mr. Chen has a B.S. degree from Georgia Tech and a Master's degree from the University of Delaware.  (Chen Dep., p. 6).

11.       Mr. Chen worked for DuPont for 25 years in the chemical engineering, research and development and production fields.  (Chen Dep., pp. 6 – 7.)

12.       Mr. Chen became involved in the real estate business in 1980, and eventually obtained his broker's real estate license in approximately 1990.  (Chen Dep., pp. 7 – 9).  Mr. Chen's broker's real estate license was terminated in September 2017.  (Chen Dep., p. 42).

13.    Mr. Chen formed Sunvest Realty, which later became a Re/Max franchise.  (Chen Dep., pp. 7 - 9).

14.    As the "broker of record" Mr. Chen was the head of the Re/Max office and had to sign off on official documentation.  (Chen Dep., p. 41).

15.    ChenMax is a real estate investment company that would buy properties and then rent or resell them.  (Chen Dep., pp. 14 – 15 and 21).  Mr. Chen believes ChenMax owes him money for his services, but he cannot document the amount.  (Chen Dep., p. 37).

16.    As of May 2018, ChenMax owned four investment properties and had a partial ownership interest in a fifth.  (Chen Dep. p. 15).

17.    The last time a property was purchased by ChenMax was two to three years ago. (Chen Dep., p. 72).

18.    Approximately twenty years ago, Mrs. Chen performed part time work from home for five years keeping the books for a real estate rental company. (Chen Dep. pp. 25 – 26).

19.    Approximately twenty years ago Mr. Chen established a $2,000 credit line account at the Tropicana Hotel in Atlantic City, New Jersey.  On occasion Mr. Chen would obtain the full amount of the credit line ($2,000) in cash from the Tropicana, and he had two weeks within which to repay the advance.  For the most part, Mr. Chen did not use the money to gamble.  Rather, Mr. Chen would obtain the $2,000 credit advances when he needed cash so he "essentially had use of the money to tide [him] over for two weeks."  (Chen Dep., pp. 182 – 187 and Deposition Exhibit 9).

20.    Mrs. Chen assisted Mr. Chen with his real estate investment activities by writing a number of monthly interest payment checks due Investors that were drawn from the Debtors' personal bank account.  Mrs. Chen made the monthly interest payments for some Investors for as

long as twenty years.  Mr. Chen told Mrs. Chen about the underlying loans when he borrowed

the money from the Investors, and in some instances Mrs. Chen was the witness on the

underlying promissory note.  As the interest payment was the same each month, Mrs. Chen

automatically knew the amount to send and did not need Mr. Chen's guidance.  (Chen Dep., pp.

198 – 201).

### C. Material Uncontested Facts – Lack of Documentation Regarding Loans and Transfers Between Debtors and Related Entities

21.     There were times when Mrs. Chen made loans to her husband or ChenMax.  Mr.

Chen did not know how she obtained the funds to make the loans.  ChenMax would make

payments to Mrs. Chen in connection with the loans.  There is no documentation regarding the

loans involving Mrs. Chen except for copies of checks from ChenMax to Mrs. Chen.  (Chen

Dep., pp. 29 – 33 and Deposition Exhibit 1).

22.     Mr. Chen also loaned money to ChenMax, and ChenMax made payments to Mr.

Chen when funds were available.  There is no documentation regarding these loans except for

copies of checks from ChenMax to Mr. Chen.  (Chen Dep., pp. 25 – 38 and Deposition Exhibit

2).

23.     Mr. Chen never deposited into his personal bank account funds earned by

ChenMax and he did not take a salary from or earn any income from ChenMax.  (Chen Dep., pp.

22 and 24).

24.     The process of Mr. Chen and ChenMax loaning money to each other when they

were low on funds started about ten years ago.  (Chen Dep., p. 174).

25.     Mr. Chen and ChenMax needed money to take care of the obligations Mr. Chen

owed to his creditors: the Investors.  (Chen Dep., p. 59).

26.      Mr. Chen and ChenMax also loaned money many times to Re/Max.  Re/Max has

two operating bank accounts.  There is one account at Wells Fargo Bank controlled by Mr. Chen.

If there was a shortage in the Wells Fargo Bank account, Mr. Chen loaned Re/Max money to

cover it, and did not first determine if the other Re/Max operating account had sufficient funds to

cover the shortage.  (Chen Dep., pp. 73 – 78).

27.      Mr. Chen would also write checks from Re/Max to ChenMax when ChenMax

needed money. (Chen Dep., p. 62).

28.      There are no promissory notes or other documentation regarding loans to Re/Max

or loans from Re/Max to Mr. Chen.  Re/Max made payments directly to ChenMax in connection

with loans it received from ChenMax or from Mr. Chen.  The repayment checks are the only

records relating to these loans.  (Chen Dep., pp. 51 – 65, 79 and Deposition Exhibits 3 - 5).  At

some point Mr. Chen was going to "settle" everything with Re/Max, but that never occurred.

(Chen Dep., p. 80).

29.      Mr. Chen does not have a record of how much ChenMax or Re/Max loaned him

over the years.  (Chen Dep., p. 238).

30.      Neither Mr. Chen nor ChenMax maintain accounting software.  (Infanti Dec., ¶

4.)

31.      The Debtors did not provide a complete set of bank statements or cancelled

checks for their personal account, the ChenMax account or the Re/Max account to the Trustee or

to the Plaintiff.  (Infanti Dec., ¶¶  4, 6, 9, 10; Declaration of Jeffrey W. Heck, CFE and

Bankruptcy Auditor (the "Heck Dec."), attached hereto as Exhibit "F", ¶¶ 7 – 8.)

### D. Material Uncontested Facts – Lack of Documentation Regarding Loans from Investors and Lack of Information on Dissipation of Assets

32.     When Mr. Chen paid back an Investor's principal, he used whatever money was in ChenMax's account, or he might loan money to ChenMax in order for the principle payment to be made to the Investor.  Investors' money went into a pool in the ChenMax account, and was then used for whatever expenses ChenMax had.  (Chen Dep., pp. 116 – 117).

33.     The initial loans Mr. Chen received from Investors appeared to have been used to purchase investment real estate.  As time went on, ChenMax had too many expenses and experienced a "negative cash flow."  The loans from subsequent Investors were then used to cover Mr. Chen's and/or ChenMax's "negative cash flow."  ChenMax had a negative cash flow for at least ten (10) years prior to the Petition Date.  (Chen Dep., p. 243).

34.     The investment properties were not providing sufficient income to cover mortgage payments and interest due Investors.  Mr. Chen continued to accept new real estate loans from Investors.  (Chen Dep., p. 245).

35.     In preparation for the bankruptcy filing, Mr. Chen prepared a list of people who loaned him money for investment purposes, the amount each was owed, and the monthly payment he had been sending them.  The list is based on "payment" information in his computer. Mr. Chen had never prepared a list of this nature prior to his bankruptcy filing.  (Chen Dep., pp. 187 -89 and 194 and Deposition Exhibit 10).

36.     Money from the Investors was deposited into ChenMax's bank account, and was used to pay ChenMax's expenses.  (Chen Dep, p. 117).

37.     Mr. Chen entered into a Real Estate Investment Partnership with Janice Antinoph and received $100,000 from Ms. Antinoph.  Mr. Chen never purchased any real estate using the

funds from Ms. Antinoph.  Only interest payments, and no principal payments, were made to Ms.

Antinoph.  (Chen Dep., pp. 96 – 107 and Deposition Exhibit 7).

      38.    ChenMax's expenses included interest due the Investors.  The interest rate

promised Investors varied from 10% to 15%, and some were at 8% or 9%.  (Chen Dep, pp. 142 –

143).  Interest was due to the Investors monthly.  Mr. Chen did not maintain account statements

showing interest payments.  Mr. Chen included a cover letter with the interest payment check to

certain investors.  Mr. Chen would just revise the prior cover letter to reflect the new date and

payment amount.  (Chen Dep, pp. 111 – 112).

      39.    When Mr. Chen collected rent from tenants in the investment properties, he

provided a receipt.  Mr. Chen did not keep a copy of the receipt.  (Chen Dep., pp. 90 – 91).

      40.    Mr. Chen does not have documentation for all the loans he received from

Investors.  (Chen Dep., pp. 189 – 190 and Deposition Exhibit 10).

## V.    ARGUMENT

      Rule 56 of the Federal Rules of Civil Procedure, applicable through Bankruptcy Rules

7056 and 9014, provides that the Court shall grant summary judgment if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law.  The moving party must establish that no genuine issue

of fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  *See Jarvis v. Vill. Gun Shop,*

*Inc.*, 805 F.3d 1, 7 (1st Cir. 2015) (stating that a fact is material "if its existence or nonexistence

has the potential to change the outcome of the suit.").  The non-moving party must then show the

existence of a genuine issue of material fact by bringing forth significant, probative evidence

sufficient to establish that a trial is necessary to resolve the dispute.  *Id.* at 322.  The Court must

view the facts in the light most favorable to the non-moving party, and may grant summary

judgment where a rational trier of fact could not find for the non-moving party. *Matsushita Elec.*

*Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Here, Plaintiff seeks partial summary judgment, asking that the Court grant the relief

sought in Counts 2 and 3 of his Amended Complaint, and deny the Debtors a discharge.  The

party seeking the denial of a debtor's discharge must demonstrate that denial is appropriate by a

preponderance of the evidence. *See, e.g., In re Rose*, 425 B.R. 145, 151 (Bankr. M.D. Pa. 2010).

In this case, the undisputed material facts and relevant case law support two separate and

independently sufficient grounds for denying the Debtors a discharge under sections 727(a)(3)

and (a)(5) of the Bankruptcy Code.

**A.  Pursuant to Section 727(a)(3), Debtors Should be Denied a Discharge for Failure to Maintain Books and Records Memorializing Relevant Transactions**

Section 727(a)(3) of the Bankruptcy Code provides that "the court shall grant the debtor a

discharge unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or

preserve any recorded information, including books, documents, records, and papers, from which

the debtor's financial condition or business transactions might be ascertained, unless such act or

failure to act was justified under all of the circumstances of the case."  The purpose of this

provision is to "give creditors and the bankruptcy court complete and accurate information

concerning the status of the debtor's affairs and to test the completeness of the disclosure

requisite to a discharge."  *Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir. 1992).  As the

Third Circuit held in *Alten,* "[c]omplete disclosure is in every case a condition precedent to the

granting of the discharge, and if such a disclosure is not possible without the keeping of books or

records, then the absence of such amounts to that failure to which the act applies."  *Id.*

12

The debtor is obligated in the first instance to produce records from which his or her financial condition may be ascertained. A party objecting to the debtor's discharge must then prove the inadequacy of the debtor's records. Once that showing is made, the burden shifts to the debtor to justify any deficiencies. *Alten,* 958 F.3d at 1233.

Here, the Debtors claim to have provided all financial records to the Trustee and/or produced them to the Plaintiff. (Of note, the production did not include tax returns for the last eight years, as the Debtors and Mr. Chen's wholly owned business (ChenMax) have not filed returns for any year after 2009.) As discussed below, the undisputed material facts, consisting in large part of Mr. Chen's own testimony, prove the inadequacy of the Debtors' disclosures. Further, the Debtors cannot meet the burden imposed upon them to prove that this lack of documentation is justified. Therefore, pursuant to section 727(a)(3) of the Bankruptcy Code, the Debtors should not be granted a discharge.

### 1.    Debtors Failed to Maintain and Preserve Adequate Records

In exchange for a fresh start, a debtor must paint a basic picture of his financial condition and satisfactorily explain the disposition of his assets during the period leading up to the filing of the bankruptcy petition. Every debtor, including Mr. and Mrs. Chen, has a duty to maintain books and records accurately memorializing their business affairs. A debtor's records must "sufficiently identify the transactions [so] that intelligent inquiry may be made of them." *Alten,* 958 F.3d at 1230 (citations omitted).   Further, "vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." *Id.* at 1233 (citations omitted). *See also Desiderio v. Devani,* 556 B.R. 37, 41 (Bankr. E.D.N.Y. 2016) ("the privilege of discharge [is] dependent on a true presentation of the debtor's financial affairs.") (citation omitted); *Christy v. Kowalski,* 316 B.R. 596, 601-02 (Bankr. E.D.N.Y. 2004) ("the court

must be mindful of the debtor's obligation in a bankruptcy case to reveal, rather than conceal, the complete financial picture.") (citations omitted).

As set forth in the Statement of Uncontested Facts, *supra,* Mr. Chen has admitted the Debtors do not have records regarding the details of their receipt and disposition of $7 million. Documents reflecting the who, what, when, where and how of the loans/investments do not exist. Further, other than negotiated checks obtained directly from the bank, there is no documentation regarding loans and payments made between Mr. Chen, Mrs. Chen, ChenMax and Re/Max.  Mr. Chen's vague, unsubstantiated testimony regarding the substantial loans received and his real estate business is unavailing.  "A debtor may not merely recite from records kept 'in [her or] his head' regarding transactions and how funds were expended; instead, complete and accurate records are required in order to allow verification of the debtor's oral statements." *In re Johnson,* Adv. No. 06-60555 (PJW), 2009 WL 65246, at *12 (Bankr. D. Del. Jan. 9, 2009).

Mr. Chen was in the real estate business for over thirty years and held a real estate brokers license for over twenty years.[3]  Despite this extensive experience and his status as a "real estate professional," Mr. Chen claims there are no records regarding the particulars of his real estate business, nor documents regarding the manner in which he handled large investments from over forty people.  During his deposition, the only records to which Mr. Chen could point were cancelled checks, deposit slips and bank statements.  In *Desiderio,* the debtor took a similar position, claiming he met his obligation because he produced all records that were in his possession and that he had relied on his bank statements that he failed to produce.  The *Desiderio* court found that this did not meet the debtor's disclosure obligation and granted summary judgment, denying the debtor's discharge.  *Desiderio*, 556 B.R. at 43.

---

[3]    The requirements to become licensed as a real estate broker of record are set forth in 24 *Del. C.* § 2907.

14

The Debtors here have also not provided documentation (nor according to Mr. Chen's testimony can they) showing the manner in which the $7 million in loans from individuals listed on Schedules E and F were spent.  A similar scenario faced the court in *Shamshovich v. Racer,* 580 B.R. 45 (Bankr. E.D.N.Y. 2018), where the debtor's schedules reflected loans totaling $1.5 million and assets with a total value of $9,500.  *Id.* at 51.  (The Debtors' liabilities are listed as totaling $6,937,271.23 vs. assets of $1,180,554).  In *Racer*, records were not provided regarding the receipt or use of the loan proceeds.  *Id.*  The court stated that the loss of $1.5 million was "clearly a considerable dissipation of assets in a seven-year period", and noted that courts have denied a discharge under 727(a)(3) for the failure to account for the loss of smaller amounts.  *Id.* at 53.  In granting summary judgment in favor of the plaintiff and denying the debtor's discharge, the *Racer* court recited additional circumstances also present here:

- the loans constituted over 60% of the debtor's liabilities and were substantial enough that the absence of records relating to the dissipation of the proceeds warranted a discharge denial (the Debtors' credit card debt accounts for only 3% of their scheduled liabilities; the remaining 97% represents debts owed to individuals.  Heck Dec., ¶ 4.);

- without corroborating records the explanation that $1.5 million was used to pay bills and expenses was insufficient (Mr. Chen claims, without support, that $7 million was used to pay bills and expenses); and

- there is no time limit for which a debtor must account for his pre-petition financial condition (here, the relevant time period of necessity must extend back to the date of the oldest loan).

*Id.*

The Debtors' case is also strikingly similar to the scenario before the First Circuit Court of Appeals in *Harrington v. Simmons (In re Simmons),* 810 F.3d 852 (5th Cir. 2016).  Debtor Simmons started in the real estate business in 1997, and in 2006 he was purchasing properties and obtaining financing.  By 2007 he had acquired 27 rental properties.  *Id.* at 855.  By November 2010 when Simmons filed a voluntary chapter 7 petition he held only 5 properties that

15

he planned to surrender.  His liabilities included $3.5 million of unsecured debt related to the real

estate business.  *Id.* at 855-56.  The appellate court's description of Simmon's lack of records

applies equally here with respect to the Debtors:

> [T]he debtor kept virtually no records in connection with his 27 income-producing
> properties.  The gaps in documentation are as pervasive as they are disturbing.
> There is a total absence of information regarding the amount of rent the debtor
> received each month; a dearth of bank statements tracing the flow of rent proceeds;
> and a general absence of documentation regarding income earned from or expenses
> paid in connection with any of the debtor's properties.  There is a similar lack of
> documentation concerning the acquisition, financing, and disposition of the
> properties.  What records there are do not permit intelligent inquiry into the debtor's
> finances.  Indeed, it is fair to characterize the debtor's real estate dealings as a black
> hole.

*Id.* at 858 (emphasis added).

The Debtors also have no records regarding the amount of rent collected, there is no way

to trace rent proceeds, and documentation of expenses paid is lacking.  The Debtors' real estate

dealings may also be characterized as a "black hole."  The undisputed material facts as set forth

above, based largely on Mr. Chen's own testimony, prove by a preponderance of the evidence

that the Debtors failed to maintain adequate records disclosing the Debtors' financial condition.

Accordingly, unless the Debtors can justify this failure, which as discussed below they cannot,

their discharge should be denied.

### 2.  Debtors' Failure to Maintain Records is Not Justified

Because the Plaintiff has met his burden of proving a failure to maintain adequate

records, the burden is placed on the Debtors to prove the failure was justified.  In determining

justification, this Court should examine the particular circumstances of the case and ask "what a

normal, reasonable person would do under similar circumstances."  *Alten*, 958 F.3d at 1231.

Factors to consider include: whether the Debtors were engaged in business, and if so, the

complexity and volume of the business; the amount of the Debtors' obligations; whether the

16

Debtors' failure to keep or preserve books and records was due to the Debtors' fault; the

Debtors' education, business experience and sophistication; the customary business practices for

record keeping in the Debtors' type of business; the degree of accuracy disclosed by the Debtors'

existing books and records; and the extent of any egregious conduct on the Debtors' part.

*Christy v. Kowalski*, 316 B.R. at 602 (citing *Krohn v. Frommann*, 153 B.R. 113, 117 (Bankr.

E.D.N.Y. 1993)).

Mr. Chen is a sophisticated business man, with the proper education and experience to

handle any and all record keeping requirements necessary for his real estate investment activities.

Mr. Chen holds a B.S. degree from Georgia Tech and a Master's Degree from the University of

Delaware, and enjoyed a twenty-five year career at DuPont, where he was employed in the

chemical engineering, research and development and production areas.

More important, though, is Mr. Chen's thirty years of experience in the real estate field,

during which time he obtained a Delaware broker's real estate license in 1990, formed Sunvest

Realty, which eventually became a Re/Max franchise, and ran ChenMax, his own real estate

investment company.  As a Delaware "broker of record," Mr. Chen was the primary person

responsible for the day-to-day management and supervision of the Re/Max brokerage

organization.  24 *Del. C.* § 2907(d).  To become a licensed Delaware real estate broker, Mr.

Chen had to pass an examination covering an extensive list of subjects designated by the

Education Committee of the Delaware Real Estate Commission.  (*See* Title 24 of the

Administrative Code of Delaware Regulations, Section 2925 entitled "Real Estate Education

Committee," (the "Delaware Regulations") set forth as Exhibit "G" hereto). To pass his

brokerage test, Mr. Chen had to be knowledgeable of, *inter alia*, finance instruments, "basic real

estate math"; "Characteristics of Investment Real Estate" and "Investment Analysis."  (Delaware

Regulations, sections 6.1.4 and 6.3.8).  The lack of records simply cannot be blamed on anyone

other than the Debtors.  Indeed, at no point during his deposition did Mr. Chen proffer an

explanation or justification for the lack of documentation, nor did he blame this failing on

anyone else.

A real estate broker lacking records showing the manner in which real estate investments

and loans were handled, is not unlike the situation before the Third Circuit in the *Alten* case

where the debtor was an attorney and business consultant.  The only evidence of the attorney's

income during the relevant period was three handwritten sheets of paper, reflecting gross

revenues of approximately $380,000.  Time records were not maintained for the consulting

practice, no written agreements or correspondence with clients concerning payment of fees or

work performed existed, and there was no evidence of payments made by clients or the payment

or reimbursement of expenses.  The debtor did have a handwritten ledger showing dates and

travel destinations and tax returns, but they also lacked supporting documentation for $120,000

in business expense deductions.  *Alten* at 1228.  The Third Circuit affirmed the denial of Mr.

Alten's discharge based on his failure to provide adequate records and the lack of justification

for not doing so.  *Id.* at 1233.  Alten openly acknowledged his intent was to avoid creditors

levying on his assets.  The Third Circuit cautioned that in order to deny a discharge, the court

need not find there was an intent to conceal a debtor's financial condition.  Rather, "[t]he only

showing required under section 727(a)(3) is that the debtor has unjustifiably failed to keep

records of his financial condition."  *Id.*

Having provided no justification, there is no way for the Debtors to meet their burden and

avoid a discharge denial.  *See Desiderio,* 556 B.R. at 42 (a debtor cannot meet his justification

burden "through vague, general, or conclusory assertions that records are not available); *In re*

*Morando*, 116 B.R. 14, 16 (Bankr. D. Mass. 1990) (debtor did not justify his failure to maintain

adequate records merely by stating that he did not understand the need for them nor did he show

that the circumstances were so unusual that ordinary record keeping was not required).  The

debtor has a duty to do more than profess a belief that their records were sufficient or that it was

not their practice to keep additional records.

Mr. Chen was an experienced investor, who holds bachelors and master's degrees.  He

became a licensed real estate broker and was in the real estate business for over thirty years.

Mrs. Chen had worked as a record keeper for a real estate rental company and issued many of the

interest payments to Investors.  With this background, "any reasonable property owner would

have kept and preserved documentation detailing income, expenses, and property disposition."

*Simmons*, 810 F.3d at 858-59 (First Circuit found no justification for the lack of records and

upheld the bankruptcy court's denial of the debtor's discharge in response to the United States

Trustee's motion for summary judgement).

In conclusion, pursuant to section 727(a)(3) of the Bankruptcy Code, the Debtors'

discharge should be denied.

**B.  Pursuant to Section 725 (a)(5), Debtors Should be Denied a Discharge for Failure to Provide a Satisfactory Explanation of What Occurred with Respect to $7 Million**

The purpose of section 727(a)(5), which permits the denial of discharge for failure to

explain the loss or deficiency of assets, is to require a debtor to make full and complete

disclosure of his or her finances, and "to relieve creditors and courts of the full burden of

reconstructing the debtor's financial history and condition."  *In re Hermanson,* 273 B.R. 538,

545 (Bankr. N.D. Ill. 2002).  The primary issue with respect to section 727(a)(5) is whether the

explanation provided satisfactorily describes what happened to the assets, not whether what

happened to the assets was proper."  *In re Park*, 682 F. App'x 88, 93 (3d Cir. 2017) (quoting *In*

*re Buzzelli*, 246 B.R. 75, 117 (Bankr. W.D. Pa. 2000)).  The bankruptcy court has discretion to

determine whether there has been a satisfactory explanation for the disposition of assets.  *In re*

*Spitko*, 357 B.R. 272, 319 (Bankr. E.D. Pa. 2006).

As with respect to section 727(a)(3), the Plaintiff bears the initial burden of proving, by a

preponderance of the evidence, that undisputed material facts prove that the Debtors formerly

owned substantial, identifiable assets that are now unavailable to distribute to creditors.

*Hermanson,* 273 B.R. at 545.  *See In re Yanni*, 354 B.R. 708, 717 (Bankr. E.D. Pa. 2006) (all the

U.S. Trustee needs to do is identify the lost assets; he or she need not show the debtor acted

knowingly or fraudulently.)  Once the Plaintiff has shown a loss or deficiency of assets, the

Debtors must provide a satisfactory explanation for the dissipation, which they are unable to

accomplish.  *Park,* 682 F. App'x at 93 (citing *In re Simmons*, 525 B.R. 543, 548 (1st Cir. BAP

2015), *aff'd*, 810 F.3d 852 (1st Cir. 2016)).

### 1.   There has been a Substantial Loss of Debtors' Assets

The Debtors' Schedules, signed under penalty of perjury, list loans from individuals

totaling almost $7 million.  At the same time, the Schedules list assets totaling $1.18 million, and

only $475,000 of that amount is attributed to investment properties.  A substantial gap exists

between the loan proceeds/investments obtained by the Debtors and the value of assets they held

as of the Petition Date.  The Plaintiff has met his burden of proving a substantial loss of assets.

### 2.   Debtors Have Not Provided a Satisfactory Explanation for the Dissipation of Assets

In determining whether an explanation regarding a loss of assets is satisfactory, courts

generally agree that (1) a debtor's mere statement that the subject assets are no longer in his

possession is not sufficient, (2) the debtor's explanation must consist of more than a "vague,

indefinite and uncorroborated hodgepodge of financial transactions," (3) explanations

20

"consisting of mere generalities and founded upon nothing by way of verification or affirmation in books, records or otherwise is not satisfactory," and (4) "vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory."" *In re Buzzelli,* 246 B.R. at 98-99.  Explanations of a generalized, vague, indefinite nature such as assets being spent on "living expenses," unsupported by documentation, are unsatisfactory. *Id.*

A debtor must provide a specific corroborated explanation of what occurred with respect to loan proceeds.  In *Shamshovich v. Racer (In re Racer),* 580 B.R. 45 (Bankr. E.D.N.Y. 2018), the debtor's schedules listed loans totaling $1.5 million, amongst other liabilities, and assets of only $9,500.  *Id.* at 51.  The court found that the plaintiff met their burden under 727(a)(5) as it was undisputed that the debtor received the loan proceeds and disposed of them.  *Id.* at 54.  The debtor though did not substantiate his use of the funds.  The court concluded that the unexplained loss of $1.5 million received during a period spanning up to seven (7) years before the bankruptcy filing justified the application of section 727(a)(5) and a denial of a discharge.  *Id.* at 55.  *See also Chalik v. Moorefield, (In re Chalik),* 748 F.2d 616, 620 (11th Cir. 1984) (debtor's general explanation that loan proceeds were invested in defunct corporations or spent on living expenses was insufficient); *Sonders v. Mezvinsky (In re Mezvinsky)*, 265 B.R. 681, 697 (Bankr. E.D. Pa. 2001) (summary judgment granted denying discharge on grounds that included debtor's failure to provide specific explanation regarding use of $1.5 million bank loan).

Here, the Debtors' only explanation is that funds were used to cover "negative cash flow."   It is impossible to trace the flow of the investment proceeds, Mr. Chen is unable to recall meaningful details regarding disposition of the funds, there is no documentation relating to the Defendants' rental income and neither the Debtors nor ChenMax have filed tax returns for years after 2009.

Under section 727(a)(5), the Plaintiff need not prove that the Debtors intended to defraud or hinder creditors.  *See In re Cook*, 146 B.R. 934, 943 (Bankr. E.D. Pa. 1992).  It is also not the Plaintiff's job to explain what happened to the Debtors' property.  Because the Debtors have not provided a satisfactory explanation regarding the dissipation of the loan proceeds, pursuant to section 727(a)(5) of the Bankruptcy Code, the Debtors' discharge should be denied.

## VI.    CONCLUSION

For all of the above-stated reasons, the Plaintiff respectfully requests that the Motion for Partial Summary Judgment on Counts 2 and 3 of the Amended Complaint – Denial of Discharge Under 11 U.S.C. § 727 be granted, and that judgement be entered against the Debtors on Counts 2 and 3 of the Amended Complaint, denying them a discharge.

Respectfully submitted,

**ANDREW R. VARA.**
**ACTING UNITED STATES TRUSTEE,**
**REGION 3**

*/s/ Linda Richenderfer*
Jane Leamy, Esq. (DE #4113)
Linda Richenderfer, Esq. (DE #4138)
Jaclyn Weissgerber, Esq. (DE #6477)
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Phone: (302) 573-6491
Fax: (302) 573-6497